**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| ARNOLD GARCIA JARAMILLO,<br><br>　　　　　　Petitioner,<br><br>vs.<br><br>A.K. SCRIBNER, et al.,<br><br>　　　　　　Respondents. | Civil No.　　　1:07-0935 JTM (RBB)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.　　INTRODUCTION

Arnold Garcia Jaramillo, a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his Fresno County Superior Court convictions for unlawful transportation of methamphetamine, unlawful possession of methamphetamine, and misdemeanor possession of marijuana in violation of California Health and Safety Code sections 11379(a), 11377, and 11357(a), respectively [doc. no. 1]. Jaramillo claims: (1) a violation of his Fourth Amendment right against unreasonable searches and seizures; (2) a violation of his Sixth Amendment right to counsel; (3) a violation of his *Miranda* rights; (4) improper admission of tampered evidence at trial; (5) insufficiency of the evidence to support his convictions; and (6) ineffective assistance of both trial and appellate counsel. (Petition ("Pet.") at 2-52.) Respondent asserts Jaramillo's claims are without merit. (Respondent's Answer at 10-32.)

The Court has considered the Petition, Respondent's Answer and Memorandum of Points and Authorities (Resp'ts. Mem.), and the Petitioner's Traverse (Traverse) wherein he requests an evidentiary hearing. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court orders Jaramillo's Petition and request for a hearing be **DENIED**.

## II.     FACTUAL BACKGROUND

Generally, this Court gives deference to state court findings of fact and presumes them to be correct. 28 U.S.C. § 2254(e)(1)(West 2007). However, in this case, the state court did not make findings of fact, so the Court has conducted an independent review of the record. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer v. Andrade,* 538 U.S. 63, 73-74 (2003) (federal habeas court must conduct independent review of record in absence of basis for reasoning in dispositive state court order). The record provides the following facts.

On January 9, 2004, Arnold Garcia Jaramillo was placed into custody for a matter unrelated to this case at the King's County Government Center. (5 Reporter's Transcript ("RT") at 510.) While he was at the main jail going through the booking process, a senior detentions deputy, Terrence Michalski, observed Jaramillo make a phone call in one of the booking stations. (*Id*. at 441.) The phones in the booking stations were only used for outgoing calls and, prior to use, callers heard a recording informing them that the call may be monitored and recorded. (*Id*. at 444.) Jaramillo's call was recorded. (*Id*. at 441-42.) When Michalski played the recording of Jaramillo's phone call, he believed he heard a female lower her voice and ask Jaramillo, "You didn't have the dope on you?" (*Id.* at 450.) Jaramillo responded that it was in the car and the female stated she would come to the government center parking lot to retrieve the vehicle. (Lodgment No. 5 at 2.) After another senior officer listened to the call and agreed with Michalski that the female had asked about "dope," Michalski contacted the Narcotics Task Force (NTF) to search for Jaramillo's car in the parking lot. (5 RT at 451.)

The NTF officers located Jaramillo's vehicle. (5 RT at 479-80.) Jaramillo's girlfriend, Ikaya Simmons, was inside the car. (*Id.*) The officers searched the vehicle and found three baggies of methamphetamine and one baggie of marijuana in the center console. (*Id*. at 466.) NTF officer, Armando Puga, then informed Jaramillo that, based on the discovery of the contraband in his car, he

would be charged with additional offenses. (*Id*. at 491-92.) Jaramillo immediately stated to Puga, "You know I'm a user." (*Id*.) Jaramillo told Puga that Simmons also "uses drugs." (Id. at 523.)

At trial the parties produced transcripts of the taped conversation. The prosecutor's version corresponded to Michalski's testimony, while the defense's version differed in one crucial aspect; whereas the prosecutor's transcript reported Simmons saying "You didn't have the dope on you?" the defense's transcript reported the same part of the tape as "Is the [inaudible] on you?" (Lodgment Nos. 5, 6.)

### III. **PROCEDURAL BACKGROUND**

On July 7, 2004, the district attorney of Kings County filed an amended information charging Jaramillo with unlawful transportation of methamphetamine in count one; unlawful possession of methamphetamine in count two; and misdemeanor possession of marijuana in count three. (Clerk's Transcript ("CT") at 85-86.) The information also alleged enhancements for a prior 1997 transportation of methamphetamine conviction, a 2003 conspiracy to transport methamphetamine conviction, a prior prison term enhancement, and an enhancement based on the commission of the charged crimes while out on bail for the 2003 conviction. (*Id*.) The trial court granted Jaramillo's request to bifurcate the trial and allow the jury to consider the enhancements and the substantive charges separately. (CT at 93.)

On July 9, 2004, the jury found Jaramillo guilty of all the substantive charges and separately found the alleged enhancements to be true. (CT at 154-60.) The court sentenced Jaramillo to an unstayed aggregate term of 12 years. (*Id.* at 242.) On August 13, 2004, Jaramillo filed a notice of appeal to the Fifth Appellate District Court of Appeal. (*Id.* at 238.)

The Court of Appeal affirmed Jaramillo's convictions but remanded to the trial court for resentencing. (Lodgment No. 1 at 5.) On February 6, 2006, Jaramillo filed a petition for writ of habeas corpus in the Superior Court, which was denied on February 10, 2006. (Lodgment No. 2.) On March 2, 2006, Jaramillo filed a petition for habeas corpus with the Court of Appeal which was denied on August 31, 2006. (Lodgment No. 3.) Jaramillo filed a subsequent habeas petition in the California Supreme Court which was summarily denied on May 23, 2007. (Lodgment No. 4.)

On June 22, 2007, Jaramillo filed the present Petition for Writ of Habeas Corpus in the United

States District Court for the Eastern District of California [doc. no. 1]. The State filed an Answer on June 26, 2008 [doc. no. 17]. On November 25, 2008, this case was reassigned to the Honorable Jeffrey T. Miller as visiting judge from the Southern District of California [doc. no. 25]. Jaramillo filed a Traverse on May 4, 2009.

**IV. <u>SCOPE OF REVIEW</u>**

Title 28, United States Code, § 2254(d), sets forth the following scope of review for federal habeas corpus claims:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits* in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (West 2006) (emphasis added).

To obtain federal habeas relief as to claims that have been adjudicated in the state courts on their merits, Williams must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer*, 538 U.S. at 73-74.

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). In this case the state court decisions do not articulate the reasoning for denial on the merits of the claims now raised by Jaramillo. If the dispositive state court order does not "furnish a basis for its reasoning,"

federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

## V. *MIRANDA* AND *MASSIAH* VIOLATIONS

Jaramillo asserts he was in custody when Officer Puga told him about new charges and that the encounter was like an interrogation. (Pet. at 5-19; Traverse 4-9.) Thus, Jaramillo claims the officer should have advised him of his *Miranda* rights under the Fifth Amendment and right to counsel under the Sixth Amendment (*Massiah* issue addressed below). (*Id.*) Jaramillo claims a recitation of his *Miranda* rights by the police would have prevented him from saying, "You know I'm a user" and, with regard to Ikaya Simmons, "Yeah, she uses drugs." (*Id.*) Therefore, Jaramillo argues his statements were inadmissible based on the violation of his rights under the Fifth, Sixth and Fourteenth Amendments. (Pet. at 5-18.)

With regard to the *Miranda* issue, Respondent argues Jaramillo was not being interrogated but made the statements voluntarily, and as such, his *Miranda* rights were not implicated. With regard to the *Massiah* issue, Respondent argues Jaramillo's right to counsel under the Sixth Amendment had not attached at the time Jaramillo made the statements because formal charges had not been filed yet in this case.

### A. *Miranda*

*Miranda* rights consist of the following warnings that must be given to suspects in custody prior to interrogation:

> a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

*Miranda v. Arizona*, 384 U.S. 436, 479 (1966). These warnings were crafted pursuant to the Fifth

Amendment right against self-incrimination and the due process clause of the Fourteenth Amendment. *Doody v. Schriro*, 548 F.3d 847, 858 (9th Cir. 2008); citing *Dickerson* v. *United States*, 530 U.S. 428, 433 (2000). There is an interplay between the *Miranda* and voluntariness tests. *Doody,* 548 F.3d at 858. "*Miranda* considered the Supreme Court's longstanding voluntariness jurisprudence in the then-new context of modern police custodial interrogations," and the concern about coerced confessions. *Id.* at 859; citing *Dickerson,* 530 U.S. at 434-35. In *Miranda*, the Court concluded that coercion inherently exists whenever a suspect is placed in custody for questioning, and the line between voluntary and involuntary becomes blurred. *Dickerson,* 530 U.S. at 435. Thus, the *Miranda* warnings were created to set down "concrete constitutional guidelines" that had to be followed, as a baseline protection, by law enforcement before statements by suspects could be evaluated for voluntariness. *Id.*

Because *Miranda* rights are not implicated until a suspect is in custody, this Court's threshold inquiry is whether Jaramillo was in custody at the time he made the admission that he was a "user." "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California,* 511 U.S. 318, 322 (1994) (*per curiam*) (citation and internal quotation marks omitted). Jaramillo was being booked into jail at the time he made the statement and was not free to leave; he was technically in custody. (*See* 5 RT at 510 (parties stipulated that Jaramillo was placed into custody at the jail in the government center)).

However, this does not mean Jaramillo's statements were inadmissible. "The fundamental import of the privilege [against self incrimination] while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be *interrogated.*" *Miranda*, 384 U.S. at 478 (emphasis added). Thus, "volunteered" statements of any kind are not barred by the Fifth Amendment. *Id.* Interrogation occurs "whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980).

With regard to the statement "You know I'm a user," the record reflects Jaramillo was not subjected to any express questioning. (5 RT at 491-92.) Jaramillo claims his encounter with officer Puga was "like an interrogation." (Pet. at 7.) In other words he believes what happened was the "functional equivalent" of an interrogation. (*Id*.) This test is based on whether the police used words or actions that they *should have known* were reasonably likely to elicit an incriminating response. *Innis*, 446 U.S. at 302. The record reflects that Jaramillo's statement, "You know I'm a user," was made spontaneously in reaction to Puga informing him that further charges would be pursued in connection with the drug find. (5 RT at 491-92.) Jaramillo was under no compulsion to make this statement. *Innis*, 446 U.S. at 300 ("interrogation, as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.") Nor would an officer reasonably believe that informing someone they will have additional drug charges filed against them would elicit an admission to the use of drugs.

With regard to Jaramillo's statement that Simmons "uses drugs," even if the statement was a response to a direct question by Officer Puga, as Jaramillo alleges, the court does not view the statement as incriminating Jaramillo or being prejudicial to the verdict. In fact, Simmons herself testified, for the defense, to owning the drugs and being under the influence of methamphetamine at the time she was apprehended by the NTF officers. (5 RT at 531.) The theory of defense was the drugs in the car belonged to Simmons. (5 RT at 590-94.) Evidence that she was a "user" would have only helped this theory. Habeas relief may only be granted if a constitutional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). Under the circumstances, Jaramillo has not illustrated the statement had any negative impact, if any, on the jury's verdict.

Jaramillo's *Miranda* rights were not violated because he was not interrogated and made the admission to being a "user" voluntarily. He also did not suffer a substantial and injurious effect from the admission of his statement that Simmons was a "user." The state court's rejection of Jaramillo's Fifth and Fourteenth Amendment claims was not contrary to or an unreasonable application of clearly established federal law. *Williams*, 529 U.S. at 412-13.

///

B. *Massiah*

In *Massiah v. United States*, 377 U.S. 201 (1964), the Supreme Court held that admission of incriminating statements elicited from an accused by federal officials following indictment, and in the absence of counsel, violated the right afforded in the Sixth Amendment (accused shall have right to counsel in all criminal prosecutions). *Massiah,* 377 U.S. at 206. Although Jaramillo had been indicted on other charges at the time he made his incriminatory statement, "You know I'm a user" with regard to the new charges, the Sixth Amendment right "is offense specific" and "cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced . . .." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). A prosecution is commenced "at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 688-89 (1972).

At the time Jaramillo made his incriminating statement on January 9, 2004, Officer Puga was informing Jaramillo that charges would be filed against him based on the discovery of drugs in the car. (5 RT at 491-92.) Formal charges were filed later on February 3, 2004. (5 RT at 10.) "Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Maine v. Moulton*, 474 U.S. 159, 180, n16 (1985). Jaramillo claims his statement "You know I'm a user" was a reference to the charges for which he was being booked into jail and therefore his Sixth Amendment right to counsel had attached. However, it is not the *statement* Jaramillo seeks to exclude that must relate to *already prosecuted charges* but the *right to counsel* that must have attached to the new charges to keep the statement out of trial on the new charges. The charges in this case had not been formally filed and were not being prosecuted at the time the statement was made, thus Jaramillo did not have a right to counsel under the Sixth Amendment.

Because Jaramillo's right to counsel under the Sixth Amendment had not yet attached, the state court's rejection of his *Massiah* claim was not contrary to or an unreasonable application of clearly established federal law. *Williams*, 529 U.S. at 412-13.

///

///

## VI. FOURTH AMENDMENT SEARCH AND SEIZURE VIOLATION

Jaramillo claims evidence of the contraband found in the car was inadmissible because it was obtained in violation of his Fourth Amendment rights. (Pet. at 28-35.) Jaramillo asserts the NTF officers did not have a search warrant for his car, nor did they have probable cause or consent for the search. (*Id*.) Jaramillo also argues that the search was illegal because it was not conducted pursuant to an arrest of Simmons. (Pet. at 32-33.) Respondent contends probable cause supported the search and seizure of Jaramillo's car. (Resp'ts. Mem. at 18.)

The Court provides a full analysis of this argument under Jaramillo's ineffective assistance of counsel claim. This is because Jaramillo may not be granted relief on a Fourth Amendment claim through a federal habeas corpus petition when he was provided an opportunity for a full and fair litigation of such claim by the State. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976) (on collateral review the costs to a rational criminal justice system of allowing exclusionary rule effectuation of the Fourth Amendment outweigh the benefits).

## VII. SUFFICIENCY OF THE EVIDENCE

Jaramillo claims there was insufficient evidence to support his convictions for transportation and possession of the drugs. (Pet. at 19-23.) He argues Simmons testified the drugs belonged to her, that she brought them to the car, and that she had already pled guilty to possession of those drugs. (*Id*.) He also states the police failed to test the baggies for fingerprints and thus there is no fingerprint evidence that the baggies belonged to him. (*Id*.) Finally, Jaramillo contends that he could not have transported the drugs in the car because when they were discovered, he was in jail and nowhere near the car. (*Id*.)

In evaluating Jaramillo's claim, this Court must ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319; citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972).

The essential elements of possession of a controlled substance are "dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its

restricted dangerous drug character. Each of these elements may be established circumstantially." *People v. Martin*, 25 Cal.4th 1180, 1184 (2001) (citation omitted). The Court first notes Jaramillo's focus on evidence favorable to his defense. Simmons testified the drugs belonged to her, that she brought them with her to the car, and that she pled guilty to charges related to the drugs. (5 RT at 531; 536.) She stated she did not use the word "dope" on the phone and that she actually said "stuff," meaning her address book. (*Id*. at 530.) This evidence would tend to show a lack of dominion, control, or knowledge, on Jaramillo's part, to constitute "possession." However, the jury could reasonably have chosen to give less weight to Simmons's testimony and more weight to Michalski's testimony, and the prosecution's transcript of the tape. Simmons had been Jaramillo's girlfriend and continued to care about him as friend. (*Id*. at 535.) Thus, she had an interest in protecting him. She admitted to being a convicted felon, and to being under the influence when she was questioned by the NTF officers. (*Id*. at 531; 537.) She could not explain why she lowered her voice during the phone conversation if she had merely inquired about her "stuff" as opposed to "dope." (*Id*. at 539.) Officer Michalski testified to hearing the phone conversation more than once and having it verified by a fellow senior officer prior to calling out the NTF officers. (5 RT at 442; 457-58.) Officer Puga testified that when he informed Jaramillo about the drug discovery he stated, "You know I'm a user." (*Id*. at 491-92.) Finally, Officer Steven Stryd was cross-examined as to why the baggies were not finger-printed and stated that it was not usual practice to do so because such prints were hard to lift off baggies. (*Id*. at 475.) This evidence supported a finding of dominion, control and knowledge[1] for Jaramillo.

"Transportation of a controlled substance is established by [simply] carrying or conveying a usable quantity of a controlled substance with knowledge of its presence and illegal character." *People v. Emmal*, 68 Cal.App.4th 1313, 1315-16 (1998) (citation omitted). Ikaya Simmons testified that she did not drive Jaramillo's car to the government center. (5 RT at 535.) She stated Jaramillo left early that morning before she woke up to go to court. (5 RT at 534.) During the taped telephone conversation, Jaramillo told Simmons to come and get the car keys from him to retrieve the car. (*Id*.

---

[1] As discussed in Section IX, below, Jaramillo stipulated that he knew the nature of the contraband, an element of both crimes.

at 526-27; Lodgment Nos. 5, 6.) Jaramillo does not contest this part of the recording. Based on this evidence, a rational trier of fact could easily have inferred that Jaramillo drove the car to the government center that morning with the drugs in the car where they were eventually found. The fact that Jaramillo was in custody and away from the car at the time the drugs were found does not make the inference unreasonable.

Based on the above evidence, the Court finds that a rational jury could have found, beyond a reasonable doubt, that Jaramillo transported and possessed the drugs found in his car. *See Jackson*, 443 U.S. at 319. Therefore, the state court's rejection of Jaramillo's insufficiency of evidence claim was not contrary to or an unreasonable application of clearly established federal law. Jaramillo's insufficiency of the evidence claim is **DENIED**.

## VIII. TAMPERED EVIDENCE

Jaramillo contends the prosecution tampered with the transcript of the phone conversation they submitted into evidence because Officer Michalski made some changes by hand to the transcript prior to trial. (Pet. at 24-27.) Officer Michalski testified he was given the transcript the morning of trial to compare it to the tape and to his recollection of the phone conversation. (5 RT at 445-46.) On the stand, he went through the parts of the transcript he altered. (5 RT at 449-50.) He changed one part from "Inaudible," to "They put you in jail." (Lodgment 5 at 1.) The change conformed to the defense's transcript. (Lodgment 6.) Michalski then changed "(inaudible) sweating cause I told em about it" to "they didn't sweat it cause I told em about it." (Lodgment 5 at 2.) Again the change conformed to the defense's transcript. (Lodgment 6.) There was no objection from defense counsel.

Evidentiary decisions by the trial court will only be reversed if the error more likely than not affected the verdict. *United States v. Edwards*, 235 F.3d 1173, 1178-79 (9th Cir. 2000). Here, the variances between the prosecutor's amended transcript and the tape recording were not material. *See Chavez v. Dickson,* 300 F.2d 683, 688 (1962) (appellants had to demonstrate material variances between recording and transcribed statements to support tampered evidence claim). Jaramillo points to wholly irrelevant changes made to the prosecution's transcript; changes which brought the prosecutor's transcript more in conformity with the defense's own transcript. (Lodgment Nos. 5, 6.) The two transcripts differed in only one pertinent way, which was untouched by Michalski; whereas

the prosecution's transcript stated that Simmons asked, "You got the dope on you?" the defense's transcript renders this part of the tape "inaudible." Thus, there is no "reasonable possibility that the [altered evidence] contributed to the conviction." *Olivas v. State of Ariz. ex rel. Eyman,* 447 F.2d 974, 975 (1971); citing *Fahy v. Connecticut,* 375 U.S. 85 (1963).

Moreover, had Officer Michalski testified solely based on his recollection of the conversation, "the fact that he was unable to repeat the conversation word for word, or was unable to recollect the substance of all of it, would present no due process question." *Chavez*, 300 F.2d at 688. Similarly, the fact that his testimony was presented by going through the transcript which may not have been an exact interpretation of the tape in parts, does not offend due process, especially since the jury heard the tape first-hand and knew the interpretation the defense gave to the arguably inaudible portions. *Accord Chavez*, 300 F.2d at 689 (a transcribed statement used to refresh a witness's recollection of a conversation does not violate due process where jury informed certain unintelligible portions of tape not transcribed).

The state court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law. *Williams*, 529 U.S. at 412-13. Jaramillo's request for a new trial or reversal of his conviction is **DENIED**.

## IX. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Jaramillo asserts several ineffective assistance of counsel claims. The standard for assessing the performance of trial and appellate counsel is the same. *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992). Jaramillo must show that his attorney's representation fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 688 (1984). He must also prove he was prejudiced by demonstrating a reasonable probability that but for his counsel's errors, the result of the proceeding would have been different. *Id.* at 694. "Judicial scrutiny of counsel's performance must be highly deferential," and adopt a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'." *Id*. at 689 (internal citation omitted).

    A.    <u>Stipulation that Jaramillo knew the nature of the contraband</u>

Jaramillo claims his trial counsel was ineffective for stipulating that Jaramillo knew the nature of the contraband. (Pet. at 38.) He states he did not agree with trial counsel and that it was prejudicial to admit an element of the crime in this way. (*Id*.) In particular, Jaramillo points to defense counsel's closing argument wherein counsel stated "some of those stipulations prove some of the elements of the crimes that Mr. Jaramillo is charged with." (*Id*.)

The record does not support Jaramillo's claim. First, the following exchange reflects Jaramillo understood and consented to the stipulation:

> PROSECUTOR: The second stipulation is that defendant knew the nature of the marijuana and methamphetamine and knew that the contraband seized in this case was marijuana and methamphetamine.
>
> THE COURT: Mr. Snyder? [defense counsel]
>
> MR. SNYDER: Yes. Can I have a moment, your Honor?
>
> THE COURT: Yes.
>
> (Discussion held off the record between the defendant and his counsel.)
>
> THE COURT: Mr. Snyder, any issue we need to address?
>
> MR. SNYDER: I don't believe so, your Honor, but just for my client's edification, if counsel for the People could slowly read our second stipulation. I want to make sure my client understands it says what the Court and I and counsel understand it to mean.
>
> PROSECUTOR: [] The second stipulation is the defendant knew of the nature of methamphetamine and marijuana and knew that the contraband seized in this case is methamphetamine and marijuana.
>
> (Off the record discussions had between the defendant and his counsel.)
>
> MR. SNYDER: We'll so stipulate, your Honor. And I'll indicate I've had an extensive discussion with my client to make sure he understood that.

(5 RT at 516-17.)

Second, the record also makes clear that defense counsel agreed to the stipulation to avoid having the jury learn about Jaramillo's prior convictions. (5 RT at 511-17.) The prosecutor wanted to introduce evidence that Jaramillo had previously suffered a conviction for conspiracy to manufacture, and a conviction for transportation, to prove knowledge of the nature of the substances found in the car. (*Id*.) However, defense counsel argued this would be unduly prejudicial and put forth the stipulation which was then read to the jury, avoiding mention of the priors. (*Id*. at 518-19.)

In closing arguments defense counsel explained that the stipulation did not obviate the prosecutor's duty to prove the other elements of the crimes. Here is the statement Jaramillo points to, put in context:

> [S]ome of those stipulations prove some of the elements of the crimes that Mr. Jaramillo is charged with. But as the Court's instructed you, for you to find a verdict of guilty on all three of the counts, you have to be convinced beyond a reasonable doubt that every single element is there. So just because he--she and I on behalf of our respective clients . . . agreed that a certain fact is true and it establishes one of the elements, you've got to have all of the elements.

(5 RT at 589-90.)

Strategic decisions by counsel to stipulate to certain facts can fall well within the range of reasonable professional assistance. *Lang v. Callahan*, 788 F.2d 1416, 1418 (9th Cir. 1986). Avoiding the introduction of Jaramillo's prior convictions in exchange for stipulating to the knowledge element of the crimes was reasonable and competent and did not prejudice the outcome of the trial.

B. <u>Failure to file motions to dismiss/suppress</u>

(1) Jaramillo argues trial counsel was ineffective for failing to file a motion to dismiss, or a motion to suppress evidence, based on the police's illegal search and seizure of his car in violation of the Fourth Amendment. (Pet. at 47.)

As outlined in the facts section of this order, Officer Michalski heard a female ask Jaramillo if he had the dope on him, to which he replied it was in the car and that the female should come and retrieve the car. (5 RT at 450-51; Lodgment No. 5.) Michalski then called the NTF officers who located the car with Jaramillo's girlfriend, Ikaya Simmons, inside, searched it and found the methamphetamine and the marijuana. (5 RT at 451; 466-68; 479-80.)

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. This protection attaches to people not places; specifically it applies wherever an individual has a reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 351 (1967). It is *per se* unreasonable under the Fourth Amendment for law enforcement to conduct a seizure without a warrant, subject to a few established exceptions. *United States v. Hawkins*, 249 F.3d 867, 872 (2001). One such exception is the "automobile exception" and applies to warrantless searches of vehicles, including

lawfully parked cars, based on probable cause. *United States v. Bagley,* 772 F.2d 482, 491 (1985). As specifically articulated by the Supreme Court, although individuals do have a reasonable expectation of privacy in their cars, the "exigencies attendant to ready mobility" of vehicles justifies warrantless vehicle searches "so long as the overriding standard of probable cause is met." *California v. Carney*, 471 U.S. 386, 390 (1985). Probable cause exists when, under the totality of circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Here, clearly the officers who searched Jaramillo's car had probable cause to do so based on Michalski's firm belief that Jaramillo stated there was "dope" in the car. (5 RT at 442; 457-58.) Michalski not only replayed the recording but had another officer listen and verify the information. (*Id*.) With this type of information and the exigency created by the imminent arrival of Ikaya Simmons to drive the car away, the warrantless search was justified based on the automobile exception to the warrant requirement.

Jaramillo appears to argue that the information forming the basis of probable cause was the "fruit" of illegally obtained information by the police listening in on his phone conversation. (Pet. at 13.) In *Katz v. United States*, 389 U.S. 347, 353-59 (1967), the Supreme Court stated that the Fourth Amendment covered not only physical intrusions into enclosures but also recordings of oral statements, and upon that reasoning held that the government's electronic surveillance of a suspect's telephone booth conversation amounted to an unreasonable search and seizure. Such protection only extends to situations where a person has a legitimate expectation of privacy, that is, where a person subjectively believes his activities are private and that such expectation is "one that society is prepared to recognize as reasonable." *United States v. Nerber*, 222 F.3d 597, 599 (2000) (citation and internal quotation marks omitted).

A recorded voice at the beginning of the telephone call alerted Jaramillo that the call may be monitored and recorded. (5 RT at 444.) A reasonable person hearing this warning would not assume "that the words he utters into the mouthpiece will not be broadcast to the world." *Katz*, 389 U.S. at 352. Under the circumstances of this case, Jaramillo could not have formed any legitimate expectation of privacy in the call he made to Simmons from the central jail booking station.

Because the information constituting probable cause for the search and seizure of Jaramillo's vehicle was legally obtained, and such automobile searches are an exception to the warrant requirement, Jaramillo's Fourth Amendment rights were not violated. Thus, trial counsel was not deficient in failing to file a motion to dismiss or suppress the evidence obtained from the telephone conversation or Jaramillo's vehicle.

(2) Jaramillo also claims that his counsel should have filed a motion to dismiss, or a motion to suppress his incriminating statement, "You know I'm a user," based on a *Miranda* violation. (Pet. at 45.) The Court has already held that the admission of this statement did not violate Jaramillo's *Miranda* rights. In section V of this order the Court determined Jaramillo's statement was voluntarily made, and not in response to any interrogation. Moreover, defense counsel did seek suppression of Jaramillo's incriminatory statement on *Miranda* grounds and the request was denied by the trial court based on the same reasoning employed by this Court. (5 RT at 425-27.)

(3) Lastly, Jaramillo argues trial counsel should have filed a motion to suppress the taped conversation between him and Simmons and the state's transcript of the conversation. Under California law, "the exclusion of evidence under Evidence Code section 352[2] is largely discretionary with the trial court and [] its ruling may not be disturbed unless there is a showing of a manifest abuse of discretion." *People v. Dreas*, 153 Cal.App.3d 623, 634 (1984). Under federal law too, a trial judge has the discretion to admit an audiotape tape as evidence despite the inaudible parts, as long as the court believes the tape is probative. *United States v. Hurd*, 642 F.2d 1179, 1183 (9th Cir. 1981). Jaramillo does not challenge the probativeness of the tape or the prosecutor's transcript, only that they did not match each other.

As discussed above in section VIII, the parts of the transcript that were altered by Officer Michalski were of a minor nature and would not have caused any prejudice to Jaramillo. However, Jaramillo claims the tape did not establish that Simmons asked about the "dope" whereas the prosecutor's transcript interpreted that particular inaudible part as "dope." (Pet. at 42.) Both the tape and prosecutor's transcript were authenticated by Michalski's testimony wherein he stated the tape

---

[2] "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

was indeed the same recording he heard the day it took place and that the transcription of the part referring to "dope" was correct according to his recollection. *See People v. Hall*, 112 Cal.App.3d 123, 126-27 (1980); citing *People v. Ketchel,* 59 Cal.2d 503, 518-19 (1963) (court did not commit prejudicial error in allowing officer who actually heard the conversation when it was recorded to testify to the accuracy of the transcript) disapproved on other grounds*; People v. Dupree,* 156 Cal.App.2d 60, 68 ("That a recording may not be clear in its entirety does not itself require its exclusion from evidence, 'since a witness may testify to a part of a conversation if that is all he heard and it appears to be intelligible.'"); citing *People v. Curtis*, 134 Cal.App.2d 624, 627 (1955). Once the evidence was properly admitted, it was up to the jury to examine the tape, witness testimony, and any transcriptions to determine what was said and to weigh the evidence. *People v. Palmer*, 222 Cal.App.2d 825, 827 (1964) (trier of fact has exclusive power to resolve factual conflicts, determine credibility of witnesses and weigh the evidence).

Defense counsel was under no duty to file motions to suppress/dismiss based upon the above meritless claims. *Strickland*, 466 U.S. at 691.

### C. Failure to object during closing arguments

Jaramillo claims his trial counsel was ineffective for failing to object to the following part of the prosecutor's closing argument:

> Did he know of the presence [of the drugs]? Of course he did. He told Ikaya where it was. It's in the car. When she asked him if he had the dope on him. Uhn-uhn. It's in the car.

(5 RT at 582.) Jaramillo states that, "By not objecting to this at least once, the jury would believe this to be true." (Pet. at 44.)

A prosecutor's closing arguments would only justify reversal of a verdict if the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Prosecutors are free to argue reasonable inferences from the evidence in the record. *United States v. Gray*, 876 F.2d 1411, 1417 (1989); citing *United States v. Polizzi*, 801 F.2d 1543, 1558 (9th Cir. 1986).

The prosecutor's argument did not contain an improper inference. The record consisted of the tape recording of the phone conversation, the prosecutor's transcript interpreting Simmons's statement

to say "you got the dope on you?", Michalski's testimony that he heard Simmons say "dope," and Puga's testimony that Jaramillo stated "You know I'm a user." To infer that Jaramillo knew of the presence of the drugs in the car from this evidence was reasonable and certainly not improper. Moreover the jury were told prior to closing arguments that "[s]tatements made by the attorneys during trial are not evidence," and "[y]ou must decide all questions of fact in this case from the evidence received in this trial and not from any other source." (5 RT at 560-61.)

Because the prosecutor's argument was properly made, defense counsel had no basis for an objection and was not deficient in failing to do so.

### D. Appellate counsel's failure to state any claims on appeal

Jaramillo contends his appellate counsel was ineffective for failing to raise any claims on appeal, specifically the following: (1) ineffective assistance of trial counsel; (2) a Miranda rights violation; (3) insufficient evidence; and (4) illegal search and seizure. (Pet. at 51-52.) He also asserts appellate counsel failed to obtain a tape of the jailhouse telephone conversation for potential new evidence and to follow up on prior appellate attorney, Cora Fox's, motion to augment the record with the minutes of a motion for vindictive prosecution held in chambers. (*Id.*)

Jaramillo's appellate counsel filed a no-merit appeal brief summarizing the facts, with citations to the record, raising no issues, and asking the court to independently review the record. (Lodgment No. 1 at 2.) This type of brief is known as a *Wende* brief pursuant to *People v. Wende*, 25 Cal.3d 436, 441-42 (1979) wherein the court approved the procedure based on precedent set by *Anders v. California*, 386 U.S. 738 (1967) (an attorney requesting to withdraw on the basis of a frivolous appeal must file brief referring to any possible arguments). The Supreme Court has held a *Wende* brief "does not violate the Fourteenth Amendment, for it provides 'a criminal appellant pursuing a first appeal as of right [the] minimum safeguards necessary to make that appeal adequate and effective.'" *Smith v. Robbins*, 528 U.S. 259, 276 (2000); quoting *Evitts v. Lucey*, 469 U.S. 387, 392 (1985) (citation and internal quotation marks omitted). Nonetheless, the *Strickland* test must still be applied to counsel's conclusion that there were no meritorious issues on appeal. *See Smith*, 528 U.S. at 285 (proper standard for evaluating a claim that appellate counsel was ineffective in neglecting to file a merits brief is that enunciated in *Strickland*).

Thus, the Court's first line of inquiry is whether appellate counsel's *filing of a no-merit brief*

was deficient and whether Jaramillo was prejudiced by that deficiency. Because the Court of Appeals concluded errors had been made in calculating Jaramillo's sentences, and remanded for resentencing, appellate counsel's failure to raise those issues amounted to deficient representation. (Lodgment No. 13-5.) However, Jaramillo was not prejudiced by the error because his sentences were correctly recalculated on remand. (Lodgment No. 1.)

The second line of inquiry is whether there was any merit to the other claims Jaramillo asserts should have been raised. The Court has already found trial counsel was not ineffective in the manner claimed by Jaramillo; that there was no Miranda rights violation, no illegal search and seizure, and that there was sufficient evidence to uphold the convictions. Thus, appellate counsel was not ineffective for failing to raise these issues on appeal.

With regard to Jaramillo's claim that appellate counsel was ineffective in failing to obtain the jailhouse tape and to pursue the minutes of the vindictive prosecution hearing, the Court has no basis upon which to evaluate these claims. Jaramillo has not stated what "new" or other evidence would have arisen from these efforts and how such evidence would have changed the outcome of the trial. For example, to prove vindictive prosecution, there must be a "realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights." *United States v. Jenkins*, 504 F.3d 694, 700 (9th Cir. 2007) (citation and internal quotation marks omitted). Jaramillo has not asserted to which legal rights he refers or why exercising those rights would have caused hostility or a punitive animus towards him by the prosecutor. Similarly, Jaramillo has not outlined why the jailhouse tape should have been requested, considering there are two transcripts (one from each party) available, what he hoped might be revealed by the tape, and how it would have changed the outcome of the appeal or the disposition of the case.

Jaramillo's bald assertions of ineffectiveness leave this Court unable to apply the *Strickland* test, particularly with regard to the prejudice prong. Without stating the outcome he hoped would result from the actions he alleges counsel should have taken, Jaramillo has essentially failed to allege the kind of prejudice necessary to defeat the second prong of *Strickland*. *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985) (in failing to assert how counsel's error would have changed result of proceeding,

habeas petitioner failed to allege necessary "prejudice" prong of *Strickland*).

In conclusion, the state court's denial of Jaramillo's ineffectiveness claims was not contrary to or an unreasonable application of clearly established federal law. Thus all the above ineffective assistance of counsel claims are **DENIED**.

## X. <u>CONCLUSION</u>

For all the foregoing reasons, **IT IS HEREBY ORDERED** Jaramillo's Petition for Writ of Certiorari and request for an evidentiary hearing is <u>**DENIED**</u> in its entirety, terminating this action.

DATED: May 18, 2009

_____
Hon. Jeffrey T. Miller
United States District Judge